**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **CLEARLY CLEAN PRODUCTS, LLC**, *et al.*<br><br>   Plaintiffs,<br><br>   *v.*<br><br>**TEKNI-PLEX, INC.**, *et al.*,<br><br>   Defendants. | **CIVIL ACTION**<br><br><br>**NO. 20-4723-KSM** |

<u>**MEMORANDUM**</u>

**Marston, J.**                                                                                          **July 7, 2026**

A non-disclosure agreement is a contract, just like any other.  Its purpose is to create rules so parties can communicate sensitive information.  So, one would expect legal claims stemming from improper use of such information would be brought in contract.  And here, at least two of the eleven claims brought by Plaintiffs Clearly Clean Products, LLC and Converter Manufacturing (collectively, "Clearly") against Defendants Tekni-Plex, Inc. and Dolco, LLC (collectively, "TPI") relate to information gleaned due to a 2018 non-disclosure agreement between Plaintiff Clearly Clean Products, LLC and Defendant Tekni-Plex, Inc. (the "NDA").[1] (*See* Doc. No. 72 at 65–67.)  But those two claims—Unjust Enrichment (Count Nine) and Tortious Interference with Prospective Contractual Relations (Count Ten)—are based not in contract, but in tort.  (*See id.*)  As such, TPI has moved to dismiss these claims under Federal Rule of Civil Procedure 12(b)(6), arguing such tort-based claims stemming from a contractual

---

[1] While Clearly failed to attach the NDA to its operative complaint in this action, it was previously attached to the initial complaint.  (*See* Doc. No. 1-2.)  So, the Court takes judicial notice of it and its contents.  *See Orabi v. Att'y Gen. of the U.S.*, 738 F.3d 535, 537 n.1 (3d Cir. 2014) ("We may take judicial notice of the contents of [this] Court's docket.")

relationship are barred under Pennsylvania law.  (Doc. No. 78.)  Clearly opposes the motion, arguing their claims go beyond the underlying NDA and are properly brought as torts.  (Doc. No. 82.)  For the reasons discussed below, the Court agrees with TPI and will dismiss Counts Nine and Ten with prejudice.

## I.  FACTUAL BACKGROUND[2]

Ten years ago, Clearly[3] introduced the Roll Over-Wrap® (the "ROW"), a recyclable plastic food tray, to the market.  (Doc. No. 72 at 6–7.)  The ROW is "a kind of tray[] used to contain cuts of meat or poultry within a plastic overwrap in a grocery and other retail settings."  (*Id.* at 6.)  Depending on customer needs, some ROWs would also be outfitted with a "'pad' – an absorbent fibrous article distinct from the tray" that "absorb[s] liquids" from some foods.  (*Id.* at 13–14.)  Due to "rapid increases in demand for" the ROW, in early 2018, Clearly's ability to insert the pads was "strained," so they reached out to third party, Commodore Plastics, LLC, for potential assistance with that step of their manufacturing process.  (*Id.*)  Around the same time, Tekni-Plex, Inc., a competitor in the market for these food trays, reached out to Clearly "to discuss opportunities for joint development and business" and Clearly learned that Tekni-Plex, Inc. "was in the process of, or had already acquired, Commodore."  (*Id.* at 14.)

On May 1, 2018, the *same day* Tekni-Plex, Inc. acquired Commodore, Clearly Clean Products, LLC and Tekni-Plex, Inc. entered into the NDA "for the purpose of securing the confidentiality of information which the parties might exchange as part of discussions regarding

---

[2] The following facts, except where noted, are taken from the Amended Complaint and are presumed true for purposes of this Memorandum.  *See Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008) ("The District Court, in deciding a motion under Federal Rule of Civil Procedure 12(b)(6), [i]s required to accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the plaintiff].").

[3] The ROW is manufactured and sold by Plaintiff Clearly Clean Products, LLC, an affiliate and the exclusive licensee of Plaintiff Converter Manufacturing's intellectual property.  (Doc. No. 72 at 2–3.)

potential padding by Commodore of trays manufactured by [Clearly Clean Products, LLC]."
(*Id.*)  And the "Purpose" of the NDA is defined as being "[i]n connection with existing, potential, or resulting business relationships between the Parties relating to the products and/or services provided by either Party."  (Doc. No. 1-2.)[4]  The NDA also states the parties would "hold [such sensitive information] in strict confidence and . . . use [it] only to the extent reasonably necessary in connection with the Purpose and not otherwise for its own gain or benefit."  (*Id.*)

"Following execution of the NDA" and "[r]elying on the NDA," Clearly Clean Products, LLC then (1) "discussed its tray-handling and padding needs with Commodore"; (2) "disclosed to one or more of [Tekni-Plex's] significant design details relating to the form and function of" the ROW; (3) "disclosed [Tekni-Plex's] trade secret information relating to [Clearly Clean Products, LLC]'s trays"; and (4) disclosed to one or more [of Tekni-Plex's] trade secret information regarding [Clearly Clean Products, LLC]'s customers and their product needs and preferences."  (Doc. No. 72 at 15.)  The parties "also discussed . . . the design of [the ROWs], possibilities for joint business endeavors relating to manufacturing, marketing, and sale of rolled-edge food trays, and the current and likely future state of the market for such trays; discussions which "flows from the parties' execution of the NDA."  (*Id.* at 16.)  Clearly continued such communications, and also provided ROWs to Commodore, up until March of 2019, after which Clearly "purchased its own machinery for automated padding of trays."  (*Id.*)  Then, "[o]n or about March 2019, [TPI] ceased contact with [Clearly] regarding padding, tray-handling, or any

---

[4] As TPI's motion to dismiss correctly points out (Doc. No. 78-1 at 5 n.1), Clearly did not attach the NDA—or any exhibits—to their Amended Complaint.  (*See* Doc. No. 72.)  But, as discussed in footnote 1 *supra*, the Court may still properly consider it because it is referenced throughout the Amended Complaint and on the docket in this action.  *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (discussing the "exception to the general rule is that a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment") (cleaned up).

other topics relating to collaboration and/or cooperation between one another." (*Id.* at 17.)

Approximately a year later, in early 2020, Clearly became aware that TPI were manufacturing

and selling food trays that compete with the ROW and contacting Clearly customers, both of

which were made possible by information gleaned through the NDA. (*Id.* at 18–19.)

## II.    PROCEDURAL HISTORY

Clearly then filed their original Complaint in September of 2020 alleging various patent,

trade secret, and other claims, including the same two unjust enrichment and tortious interference

claims at issue before the Court today. (*See* Doc. No. 1; *see also* Doc. No. 61-3 at 107–11 (a

comparison of the original Complaint versus the Amended Complaint that shows no substantive

changes regarding those two claims).) In December of 2020, TPI filed a motion to dismiss some

of the claims in Clearly's original Complaint, including the same two tort claims at issue here,

arguing those specific claims were improperly brought as torts. (*See* Doc. No. 24.) The issue

was fully briefed by the parties (*see* Doc. Nos. 24, 26, 32, 36), but prior to any ruling, this action

was stayed so the parties could complete inter partes review, an administrative proceeding at

which a party may challenge the validity of a patent, at the United States Patent Trial and Appeal

Board.[5] (*See* Doc. No. 44.) Inter partes review and the ensuing appeals were completed in 2025,

and that September, Clearly sought leave to amend their Complaint. (*See* Doc. Nos. 60, 61.) We

granted leave to amend on March 13, 2026, and Clearly filed their Amended Complaint three

days later. (*See* Doc. Nos. 71, 72.)

---

[5] While TPI's original motion to dismiss was pending in 2020, this action was assigned to the Honorable C. Darnell Jones, II. (Doc. No. 13.) Then, in November 2022, while the action was stayed so the parties could complete inter partes review (Doc. No. 44), the case was reassigned to the Honorable Karen Spencer Marston.

TPI then timely moved to dismiss on March 31, 2026, renewing its argument that the unjust enrichment and tortious inference claims are barred because they are contract claims improperly brought as torts.  (*Compare* Doc. No. 78, *with* Doc. No. 24.)  Clearly responded, arguing that (1) while its claims are related to the NDA, they go beyond its scope and thus should survive a motion to dismiss, and (2) if the Court determines otherwise, we should give leave to amend.  (Doc. No. 81.)  TPI replied reiterating its arguments for dismissal and emphasizing that Clearly should not be given leave to amend again.  (Doc. No. 83.)  Thus, TPI's motion is ripe for resolution.

## III.    LEGAL STANDARD

In deciding a motion to dismiss under Rule 12(b)(6), the court must determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*  Accordingly, a complaint that "pleads facts that are 'merely consistent with' a defendant's liability . . . 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

"Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true." *Twombly*, 550 at 555.  And a plaintiff "need only put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009).  Although the Court must accept as true the allegations in the complaint and all

5

reasonable inferences therefrom, *Phillips*, 515 F.3d at 228, the Court is not "compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Castleberry v. STI Grp.*, 863 F.3d 259, 263 (3d Cir. 2017) (internal quotation omitted); *see also Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) ("Mere restatements of the elements of a claim are not entitled to the assumption of truth." (cleaned up)).

## IV.    DISCUSSION

The Court finds that Clearly has improperly brought contract claims as torts and thus Counts Nine and Ten must be dismissed.  Further, because Clearly will be unable to plead around this issue and considering they have been on notice of this pleading deficiency for almost six years, we find that leave to amend would be both futile and prejudicial to TPI.  Thus, Counts Nine and Ten will be dismissed with prejudice.  We discuss each of the Counts in turn, before addressing leave to amend.

### A.    *Clearly's Unjust Enrichment Claim is Subsumed by the NDA*

To state a claim for unjust enrichment under Pennsylvania law, a plaintiff must allege facts tending to show: (1) "benefits conferred on defendant by plaintiff;" (2) "appreciation of such benefits by defendant;" (3) "acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value." *Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C.*, 179 A.3d 1093, 1102 (Pa. 2018) (quoting *Shafer Elec. & Const. v. Mantia*, 96 A.3d 989, 993 (Pa. 2014)).  But "[i]t is well-settled in Pennsylvania that the existence of a contract prevents a party from bringing a claim for unjust enrichment." *Vantage Learning (USA), LLC v. Edgenuity, Inc.*, 246 F. Supp. 3d 1097, 1100 (E.D. Pa. 2017).  This axiom is because unjust enrichment is a "'quasi-contractual doctrine' that does not apply in cases where the parties have

a written or express contract." *Premier Payments Online, Inc. v. Payment Sys. Worldwide*, 848 F. Supp. 2d 513, 527 (E.D. Pa. 2012); *see also Wilson Area Sch. Dist. v. Skepton*, 895 A.2d 1250, 1254 (Pa. 2006) (quoting *Third Nat'l Bank & Tr. Co. v. Lehigh Valley Coal Co.*, 44 A.2d 571, 574 (Pa. 1945) ("[I]t has long been held in this Commonwealth that the doctrine of unjust enrichment is inapplicable when the relationship between parties is founded upon a written agreement or express contract, regardless of how 'harsh the provisions of such contracts may seem in the light of subsequent happenings.'")).

Here, TPI correctly argues that the underlying source of Clearly's unjust enrichment claim is the NDA between the parties. (*See* Doc. No. 78-1 at 6–8.) The NDA contains a clear provision that Tekni-Plex, a "receiving party" in the NDA, could only use the information gleaned "to the extent reasonably necessary in connection with [existing, potential, or resulting business relationships between the Parties] and *not otherwise for its own gain or benefit*." (Doc. No. 1-2 (emphasis added).) Meanwhile, the Amended Complaint alleges TPI was "unjustly enriched by obtaining trade secrets and business from Plaintiffs, none of which it could have obtained but for Plaintiffs' disclosures under the May 1, 2018 NDA" and that TPI "improperly utilized such information for their own enrichment." (Doc. No. 72 at 65.) In short, without the NDA, not only would there be no relationship between the parties, but also there would be no information upon which TPI could have possibly unjustly enriched itself. So, because Clearly's unjust enrichment claim is predicated on the existence of the NDA, we cannot allow it to proceed in this Court. *See Smith v. Univ. of Pa.*, 534 F. Supp. 3d 463, 476 (E.D. Pa. 2021) ("Under Pennsylvania law, a plaintiff may not recover under a theory of unjust enrichment if the parties' relationship is governed by a written contract.")

Clearly only makes one argument to try and stave off dismissal of Count Nine; it fails to convince.  (*See* Doc. No. 81 at 7–8.)  Clearly attempts to distinguish the case law cited by TPI as only dealing with the situation "where the conduct complained of was proscribed by a contract." (*Id.* at 7 (citing *Philidor Rx Servs. LLC v. Polsinelli PC*, 552 F. Supp. 3d 506, 515–16 (E.D. Pa. 2021)).  Clearly claims that, here, "Defendants may not have breached the NDA, but nevertheless unjustly enriched themselves using the information obtained thereby" to commit broader harms not covered by the terms of the NDA.  (Doc. No. 81 at 7.)  Specifically, Clearly baldly claims that "the NDA in this case does not have any private, confidential misuse convents in its terms."  (*Id.* at 8.)  But this argument ignores the clear language in the "**Use and Disclosure**" section of the NDA restricting use of information for a party's "own gain or benefit."  (Doc. No. 1-2.)  And it fails to address how the Court could allow a quasi-contractual claim like unjust enrichment when the underlying source of the information, and the parties' relationship, is based in a contract Clearly does not dispute is valid.  *See Philidor*, 552 F. Supp. 3d at 515–16; *Brezinski v. Widener Univ.*, 582 F. Supp. 3d 257, 267–68 (E.D. Pa. 2022).  So, Count Nine will be dismissed.

### B.      *Clearly's Tortious Interference Claim is Barred by Gist of the Action*

Count Ten, alleging tortious interference, meets the same fate as Count Nine for similar reasons.  Under Pennsylvania law, a tortious inference claim has the following four elements: "(1) the existence of a contractual, or prospective contractual relation between the complainant and a third party; (2) purposeful action on the part of the defendant, specifically intended to harm the existing relation, or to prevent a prospective relation from occurring; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual legal damage as a result of the defendant's conduct."  *CGB Occupational Therapy, Inc. v. RHA Health*

*Servs. Inc.*, 357 F.3d 375, 384 (3d Cir. 2004).  But "[a] tortious interference with contract claim is barred by the gist of the action doctrine if it is not independent of a contract claim. . . ." *Alpart v. Gen. Land Partners, Inc.*, 574 F. Supp. 2d 491, 505 (E.D. Pa. 2008).  The gist of the action doctrine "provides that an alleged tort claim against a party to a contract, based on the party's actions undertaken in the course of carrying out a contractual agreement, is barred when the gist or gravamen of the cause of action stated in the complaint, although sounding in tort, is, in actuality, a claim against the party for breach of its contractual obligations." *Bruno v. Erie Ins. Co.*, 106 A.3d 48, 53 (Pa. 2014).

"[T]o evaluate whether the gist of the action doctrine applies, a court must identify the duty breached, because the nature of the duty alleged to have been breached . . . [is] the critical determinative factor in determining whether the claim is truly one in tort, or for breach of contract." *Id.* (internal citation omitted).  "In this regard, the substance of the allegations comprising a claim in a plaintiff's complaint are of paramount importance, and, thus, the mere labeling by the plaintiff of a claim as being in tort . . . is not controlling." *Id.*  "Put simply . . . to determine whether an action is barred by the gist of the action doctrine, we must examine the factual allegations and ask, '[w]hat's this case really about?'" *Id.*  (quoting *Pediatrix Screening, Inc. v. TeleChem Int'l, Inc.*, 602 F.3d 541, 550 (3d Cir. 2010), *overruled on other grounds by Ortiz v. Jordan*, 562 U.S. 180 (2011)).

Here, TPI correctly argues that the alleged original sin that underpins Clearly's tortious interference claim is the NDA.  Clearly alleges that "[i]n reliance upon the existence of the NDA . . ., [Clearly] disclosed confidential and/or trade secret information to one or more of the Defendants" and then TPI "[m]isuse[d] . . . Plaintiffs' confidential and/or trade secret information . . . for the purpose of harming" Clearly's business relations with third parties.  (Doc.

9

No. 72 at 66–67.)  And, as discussed in Section IV.A *supra*, not only is the NDA the only reason Clearly had access to such confidential information, but also it expressly prohibits the type of conduct alleged in Count Ten.  (*See* Doc. No. 1-2 (permitting Defendants to use Plaintiffs' confidential information "only to the extent reasonably necessary in connection with the Purpose and not otherwise for its own gain or benefit").)  TPI's citations to *Hirtle Callaghan Holdings, Inc. v. Thompson*, 18cv2322, 2022 WL 2048656 (E.D. Pa. June 7, 2022) and *Depuy Synthes Sales, Inc. v. Globus Med., Inc.*, 259 F. Supp. 3d 225 (E.D. Pa. 2017) speak directly to this issue. In both, the court dismissed tortious inference claims because the underlying contract between the parties either covered "the exact conduct" or was "inextricably interwoven with the contractual duties at issue."  *Hirtle*, 2022 WL 2048656 at \*6; *Depuy*, 259 F. Supp. 3d at 244.  In short, the *true* duty that TPI allegedly breached was they improperly leveraged Clearly's confidential information to steal Clearly's clients and market share.  The keystone of such allegations is the NDA; without it, the house of alleged inference falls apart.

As with Count Nine, Clearly's arguments against dismissal of Count Ten fall short. Clearly attempts to distinguish *Hirtle* and *Depuy* because they dealt with two different types of contractual agreements, stock agreements and non-solicitation contracts, respectively.  (Doc. No. 81 at 8.)  But this is a distinction without a difference.  The gist of the action doctrine does not turn on whether the actions of the alleged tortfeasor are expressly laid out in the contract, but whether the initial duty flows from contract or tort.  *See Bruno*, 106 A.3d at 53.  Here, Clearly cannot avoid that the initial duty they allege TPI owed began only upon the signing of the NDA. So, Count Ten will be dismissed.[6]

---

[6] TPI also sought dismissal of Count Ten due to Clearly's failure to identify a prospective contractual relationship that TPI interfered with.  (*See* Doc. No. 78-1 at 10.)  Because we find Count Ten is barred by the gist of the action doctrine, we need not reach TPI's arguments on this issue.

**C.    *Clearly Will Not Be Given Leave to Amend Because Amendment Would be Futile and Prejudicial***

Clearly will not be given leave to amend because amendment would be futile and highly prejudicial to TPI.  Federal Rule of Civil Procedure 15(a) provides that "leave [to amend] shall be freely given when justice so requires."  But a Court may deny leave to amend where there has been "undue delay, bad faith or dilatory motive on the part of the movant; repeated failure to cure deficiencies by amendments previously allowed; prejudice to the opposing party; and futility."  *Mullin v. Balicki*, 875 F.3d 140, 149 (3d Cir. 2017).  And "[t]he decision to grant or deny a motion for leave to amend is within the sound discretion of the district court."  *Shopman's Loc. Union 502 Pension Fund v. Samuel Grossi & Sons, Inc.*, 578 F. Supp. 3d 698, 703 (E.D. Pa. 2022).  Here, there are two separate and independent reasons to deny Clearly leave to amend.

***First***, amendment of either Count Nine or Count Ten would be futile.  "Amendment is futile if the amended complaint would not survive a motion to dismiss for failure to state a claim upon which relief could be granted."  *McCormick v. Kline*, 670 F. App'x 764, 766 (3d Cir. 2016) (quoting *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000)) (cleaned up).  Both Counts are Pennsylvania common law torts that this Court had determined are actually contract claims improperly seeking to pass themselves off as torts.  Clearly will be unable to plead around these deficiencies, so they are fatal to these two tort claims.

***Second***, amendment at this stage of the case would severely prejudice TPI.  This action began almost six years ago in 2020.  While this action was stayed for much of that time and prior to the start of discovery, by early 2021 the parties had fully briefed a partial motion to dismiss in which TPI made the *exact* arguments it makes in the instant motion.  (*See* Doc. Nos. 24, 32, 78, 83.)  And, once Clearly sought leave to amend in September of 2025, it not only chose to replead Counts Nine and Ten, but made no substantive changes to them even with full knowledge of

11

TPI's prior motion, after multiple communications and meet & confers, and fully briefing and arguing their motion for leave to amend.  (*See* Doc. No. 61-3 at 107–11; Doc. No. 64 at 11–12; Doc. Nos. 74–75.)  Now that this case has moved into discovery, and the parties are closing in on the end of claim construction discovery, allowing Clearly another bite at an already stale apple would severely prejudice TPI by continuing to delay the close of pleadings in this action.

## V.    CONCLUSION

Two of Plaintiffs' claims are improper attempts to plead contract claims as torts.  So, the Court will grant Defendants' partial motion to dismiss.  And, because any amendment to those claims would be futile and would severely prejudice Defendants, who have properly put Plaintiffs on notice of their pleading deficiencies for over five years, we do not grant Plaintiffs' request for leave to amend and the dismissal will be with prejudice.

An appropriate order follows.